**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JUDSON PANKEY,

        Plaintiff,

v.                                Case No.: 6:23-cv-1119-WWB-UAM

AETNA LIFE INSURANCE COMPANY,

        Defendant.
                                     /

## ORDER

THIS CAUSE is before the Court on Plaintiff Judson Pankey's Motion for Summary Judgment (Doc. 22) and Defendant Aetna Life Insurance Company's ("**Aetna**") Motion for Summary Judgment (Doc. 24). United States Magistrate Judge Embry J. Kidd issued a Report and Recommendation ("**R&R**," Doc. 29), in which he recommends that Plaintiff's Motion for Summary Judgment be granted, and Defendant's Motion for Summary Judgment be denied.[1] Defendant filed an Objection (Doc. 31), to which Plaintiff filed a Response (Doc. 32).

**I.   BACKGROUND**

No party has objected to the relevant background as fully set forth in the R&R and it is hereby adopted and made a part of this Order accordingly. (Doc. 29 at 1–12).

---

[1] Defendant's Motion fails to comply with this Court's January 13, 2021 Standing Order. In the interests of justice, the Court will consider the filing because this matter is fully briefed and ripe for resolution on the merits. The parties are cautioned that future failures to comply with all applicable rules and orders of this Court may result in the striking or denial of filings without notice or leave to refile.

## II. LEGAL STANDARD

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court must consider the record and factual issues independent of the magistrate judge's report, as de novo review is "essential to the constitutionality of [§] 636." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990). The objecting party must state with particularity findings with which it disagrees, along with its basis for the disagreement. *Kohser v. Protective Life Corp.*, 649 F. App'x 774, 777 (11th Cir. 2016) (citing *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)). The court will not consider "[f]rivolous, conclusive, or general objections." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988) (citation omitted).

## III. DISCUSSION

### A. Objections

Magistrate Judge Kidd recommends that the Court find Defendant's decision to terminate Plaintiff's long-term disability ("**LTD**") benefits was arbitrary and capricious because: (1) Defendant only had the authority to suspend or adjust Plaintiff's benefits under the terms of the applicable employee welfare benefit plan ("**Plan**"), and (2) the decision to terminate Plaintiff's LTD benefits was inconsistent with Defendant's past practice and, therefore, unreasonable. Defendant raises three objections in opposition.

As an initial matter, Defendant argues that the R&R misconstrues the terms of the Plan by failing to read relevant provisions as part of a whole. *See SA Palm Beach, LLC*

2

*v. Certain Underwriters at Lloyd's London*, 32 F.4th 1347, 1356 (11th Cir. 2022) ("Under Florida law, an insurance policy should be read 'as a whole, endeavoring to give every provision its full meaning and operative effect.'" (quoting *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007))). "[W]here parties use different language in different provisions of a contract, courts presume that those provisions have different meanings." *Peterbrooke Franchising of Am., LLC v. Mia. Chocolates, LLC*, No. 21-10242, 2022 WL 6635136, at *5 (11th Cir. Oct. 11, 2022) (citing *Aleman v. Gervas*, 314 So. 3d 350, 352 (Fla. 3d DCA 2020)). "[E]very provision in a contract should be given meaning and effect to avoid rendering any provision mere surplusage." *Id.* (quoting *Nat'l R.R. Pass Corp. (Amtrack) v. Rountree Trans. & Rigging, Inc.*, 422 F.3d 1275, 1284 (11th Cir. 2005)). Four provisions of the Plan are relevant to Defendant's objection. First, the Plan provides that a recipient of LTD benefits "will no longer be considered as disabled nor eligible for long term monthly benefits" when the recipient "no longer meet[s] the LTD test of disability, as determined by Aetna" or "fail[s] to provide proof that [recipient] meet[s] the LTD test of disability." ("**Termination Provisions**," Doc. 21-2 at 1423). Second, the Plan confers on Aetna "the right to suspend or adjust th[e] plan's benefits by the estimated amount of the other income benefits" when a recipient fails to provide "the proof that Aetna may require." ("**Proof of Income Provision**," *id.* at 1427–1428). Third, the Plan provides that a recipient "shall, upon request, submit proof that [the recipient] continues to meet the definition of an eligible group as provided under applicable law or regulation." ("**Compliance Provision**," *id.* at 1405). Finally, the Plan provides that "[b]enefits will be paid as soon as the necessary proof to support the claim is received." ("**Payment Provision**," *id.* at 1435). Defendant argues that these provisions, considered together,

3

contradict Magistrate Judge Kidd's conclusion that Plaintiff's submission of some proof—even if not sufficient proof—limited Defendant to a suspension or adjustment of benefits but that Defendant could only terminate benefits if Plaintiff failed to provide proof entirely.

These provisions, read together and giving the fullest effect to each individually and in context, clearly afford Defendant discretion to reasonably determine whether Plaintiff had submitted sufficient proof to avoid termination. At the outset, the Proof of Income Provision warns that Aetna may suspend or modify benefits if they "do not provide the proof *that Aetna may require*." (*Id.* at 1427–1428 (emphasis added)). Further, the Payment Provision provides that benefits shall issue only upon receipt of "necessary proof." (*Id.* at 1435). These provisions expressly condition the proof required and thus confer on Defendant discretion to evaluate the sufficiency of Plaintiff's proof of LTD eligibility.

As the R&R notes, the Termination Provisions do not similarly condition the proof Plaintiff must submit. (Doc. 21-2 at 1423). The R&R interprets this language to mean that Aetna lacked discretion to terminate benefits because of insufficient proof, and therefore, as long as Plaintiff submitted *some* proof of income, that was sufficient to avoid termination. However, the R&R fails to consider that the Termination Provisions provide that Aetna may terminate LTD benefits when Plaintiff no longer met the "LTD test of disability, *as determined by Aetna*," or if Plaintiff failed to "provide proof that [he met] the LTD test of disability." (*Id.* (emphasis added)). Because Aetna has discretion to determine its own LTD test of disability, it necessarily follows that it must also have discretion to evaluate the sufficiency of proof that Plaintiff meets that test. To conclude otherwise would nullify Aetna's express discretion to determine the LTD test of disability,

4

an illogical and impermissible outcome. *See Peterbrooke Franchising of Am., LLC*, 2022 WL 6635136, at *5 ("[E]very provision in a contract should be given meaning and effect to avoid rendering any provision mere surplusage." (quoting *Nat'l R.R. Pass. Corp. (Amtrak)*, 422 F.3d at 1284)). The Court will sustain this objection and therefore need not address Defendant's argument that the R&R improperly elevated form over substance.

  Next, Defendant objects on the ground that the R&R misapplied the applicable legal standard under the Employee Retirement Income Security Act ("**ERISA**") by failing to give deference to Defendant's decision to terminate Plaintiff's benefits. Specifically, Defendant argues that Magistrate Judge Kidd "improperly substituted his own judgment for that of Defendant" in concluding that "Defendant acted arbitrarily in terminating benefits" on the grounds that "Plaintiff provided *some* proof (albeit not proof that Defendant deemed sufficient)" that he met Aetna's LTD test of disability. (Doc. 31 at 8). The R&R acknowledges that the terms of the Plan grant Defendant "discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits and to construe any disputed or doubtful terms[.]" (*See* Doc. 29 at 13 (quoting Doc. 21-2 at 1409)). The policy further states that Aetna "shall be deemed to have properly exercised such authority unless [they] abuse [their] discretion by acting arbitrary and capriciously," and that Aetna possesses "the right to adopt reasonable policies, procedures, rules, and interpretations" of the Plan "to promote orderly and efficient administration." (*Id.*). Because the terms of the policy unequivocally grant Defendant the discretionary power to construe disputed terms and adopt reasonable interpretations of the Plan, Aetna's use of those powers are "not subject to control by the court except to prevent an abuse by the trustee of his discretion." *HCA Health Servs. of*

5

*Ga., Inc. v. Emps. Health Ins. Co.*, 240 F.3d 982, 994 (11th Cir. 2011) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 499 U.S. 101, 111 (1989)).  Put another way, "a trustee's interpretation will not be disturbed if it is reasonable." *Id.* (quoting *Firestone*, 499 U.S. at 110–11 (1989)).  "If the court determines that the claims administrator's wrong interpretation is reasonable, then this wrong but reasonable interpretation is entitled to deference even though the claimant's interpretation is also reasonable." *Id.*

The Court finds that it is reasonable for Defendant to interpret the Plan to allow for the termination of benefits absent sufficient proof.  As noted above, the Compliance Provision required Plaintiff to, "upon request, submit proof that [he] continues to meet the definition of an eligible group as provided under applicable law or regulation." (Doc. 21-2 at 1405).  Here, the Plan's use of the word proof resembles the provision dictating that Plaintiff "will no longer be considered as disabled nor eligible for long term monthly benefits" on the day Plaintiff fails "to provide proof that [he] meet[s] the LTD test of disability." (*Id.* at 1423).  Because these provisions mirror each other, Defendant could have reasonably construed the use of the term "proof" to mean the proof sought "upon request" rather than any proof provided or deemed sufficient by Plaintiff.  That interpretation, which allows Aetna to list what proof is necessary to support a claim, also falls within Aetna's discretionary "right to adopt reasonable policies, procedures, rules, and interpretations" of the Plan "to promote orderly and efficient administration." (*Id.* at 1409).  Such an interpretation is further consistent with Defendant's discretion to determine its own LTD test of disability.  (*See id.* at 1423).

Here, Plaintiff's responsibility to provide "continuing proof of [his] disability" was triggered by Defendant's request on June 21, 2021, that Plaintiff specifically "complete

6

the attached Claimant Questionnaire within 60 days" and "include copies of [his] 2020 Tax Returns/Schedule K-1 Form." (Doc. 21-1 at 705–706). It is undisputed that Plaintiff did not respond with the proof sought despite several requests by Defendant. (*See* Doc. 29 at 7–9). After Defendant initially terminated Plaintiff's benefits, Plaintiff submitted documents to reverse the termination on appeal, but none of those documents included the specific financial proof sought "upon request" by Defendant. (*Id.* at 9). Left without the requested proof, Defendant's decision to terminate Plaintiff's LTD benefits was reasonable. Because Defendant's interpretation falls within its discretion and is reasonable, that interpretation "is entitled deference" and "must be upheld as not arbitrary or capricious." *HCA Health Servs. of Ga., Inc.*, 240 F.3d at 994; *Collins v. Life Ins. Co. of N. Am.*, No. 6:21-cv-1756, 2023 WL 2633309, at *7 (M.D. Fla. Mar. 24, 2023) (quoting *Eady v. Am. Cast Iron Pipe Co.*, 203 F. App'x 326, 328 (11th Cir. 2006)). Thus, Defendant's objection will be sustained.[2]

Finally, Defendant objects insofar as the R&R misstates that Defendant never terminated Plaintiff's benefits in the past for failure to provide personal tax returns. "In determining whether a plan administrator's decision is arbitrary and capricious, the Court is limited to deciding whether [Aetna's] interpretation of the Plan was made rationally and in good faith." *Epolito v. Prudential Ins. Co. of Am.*, 737 F. Supp. 2d 1364, 1375 (M.D.

---

[2] Defendant also objects to the R&R on the grounds that it misstates or overlooks key facts in its analysis. (Doc. 31 at 3–4). Defendant specifically argues that the R&R overlooks Plaintiff's failure to submit the Schedule K-1 Forms and Updated Claimant Questionnaire requested by Defendant. (*Id.*). This argument overlaps with the issue of whether or not Defendant's interpretation of the Plan was reasonable, as these documents are part of the specific proof requested by Defendant. Because the Court finds that Defendant's interpretation of the Plan was reasonable, Defendant's objection on this ground will be sustained without further discussion.

7

Fla. 2010) (citing *Cagle v. Bruner,* 112 F.3d 1510, 1518 (11th Cir. 1997)). Several factors can be relevant to determining whether "a plan administrator's decision is arbitrary and capricious," including "(1) the uniformity of [Aetna's] construction; (2) the reasonableness of its interpretation; and (3) possible concerns with the way unexpected costs may affect the future financial health of [Aetna]." *Id.* (quoting *Cagle*, 112 F.3d at 1518). "Other factors may also be relevant, such as the internal consistency of a plan, the relevant regulations formulated by administrative agencies, and the factual background of the determination, including any inferences of bad faith." *Id.* (quotations omitted).

In the R&R, Magistrate Judge Kidd found that "Plaintiff's LTD benefits were terminated on at least four other occasions prior to the termination at issue" and that Defendant notified Plaintiff it had terminated those LTD benefits "based on Plaintiff's failure to provide his tax returns" in a letter dated June 22, 2015. (Doc. 29 at 2–4). In its discussion of only the first factor above, however, the R&R asserts that Defendant provided "*no* basis for terminating Plaintiff's benefits based on Plaintiff's failure to provide tax returns, when—for years—Defendant never received them and never terminated Plaintiff's benefits for that reason." (*Id.* at 16). The R&R then relies on this purportedly inconsistent past practice as an additional basis for concluding that Defendant's decision to terminate Plaintiff's LTD benefits was arbitrary and capricious. (Doc. 29 at 16–18).[3]

---

[3] Defendant notes that "whether Defendant has interpreted the Plan's terms uniformly is *one of numerous factors* used to determine whether the decision at issue is arbitrary." (Doc. 31 at 9). The Court agrees. Indeed, the R&R admits that whether Defendant uniformly applied its past interpretation is only "one factor in determining whether a decision is arbitrary and capricious." (Doc. 29 at 18); *see also Cagle*, 112 F.3d at 1518–19 & n.6 (distinguishing relevant and irrelevant factors and analyzing all relevant factors). However, for the reasons stated below, the Court need not analyze each factor to address Defendant's Objection because it does not agree with the R&R's analysis of that factor.

8

But the record belies this conclusion. As Defendant states, "[t]he claims administrator had, in fact, terminated [Plaintiff's] benefits in 2015 for his failure to provide his 2011 to 2013 tax returns." (Doc. 31 at 4; *see also* Doc. 21-1 at 553–563). Appealing that decision, Plaintiff provided Aetna with financial documents related to his real estate investment in Brown Little Development, and his LTD benefits were later reinstated. (Doc. 21-1 at 570–572). Because Plaintiff's benefits were reinstated on this basis, the R&R notes that "Aetna, for years, determined that benefits were payable pursuant to the terms of the LTD Plan based on Plaintiff's provision of the Schedule K-1 forms for Brown Little Development." (Doc. 29 at 18). Thus, the R&R reasoned that it "is unclear, based on the entirety of the record and the parties' lengthy history, why the termination at issue in this case was different." (*Id.*). Because the Plan's terms vest Aetna with the "discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits and to construe any disputed or doubtful terms," Aetna could have deliberately construed the terms of its plan in a light favorable to Plaintiff and allowed the K-1 forms as a substitute. (Doc. 21-2 at 1409). But it is undisputed that Plaintiff did not provide updated K-1 forms in this case as he had done in the past. (*Id.* at 9–10). At a minimum, this change in circumstance weighs against a finding that Defendant abused its discretion in terminating Plaintiff's LTD benefits due to an inconsistent construction of the Plan. Accordingly, the Court will sustain this objection.

### B. Motions for Summary Judgment

As an initial matter, to the extent Plaintiff attempts to raise an ERISA retaliation claim, the argument will not be considered. (Doc. 22 at 15); *see also Norton v. nexAir, LLC*, No. 1:19-CV-03901, 2022 WL 1669468, at *6 (N.D. Ga. Mar. 29, 2022) ("[I]t is well-

9

established that plaintiffs cannot 'raise new claims at the summary judgment stage' or seek to amend their claims 'through argument in a [summary judgment] brief[.]'" (quoting *Qian v. Sec'y, Dep't Veterans Affs.*, 432 F. App'x 808, 809–10 (11th Cir. 2011))). Plaintiff's Complaint does not allege a standard ERISA retaliation claim. *See Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1343 (11th Cir. 2000) ("ERISA also protects employees against retaliation for asserting claims to benefits under an ERISA plan." (citing 29 U.S.C. § 1140)). Rather, Plaintiff only raises a claim under 29 U.S.C. § 1132(a)(1)(B) for payment and reinstatement of his benefits, along with attorney's fees, under the Plan. (*See* Doc. 1, ¶¶ 12–17).

The Court now turns to resolve the remaining arguments raised in the parties' motions for summary judgment. Because the Court concludes that the terms of the Plan confer discretion on Aetna to determine claims and appeals, the "dispositive question is whether [Aetna's] decision was arbitrary and capricious." *Prelutsky v. Greater Ga. Life Ins. Co.*, 692 F. App'x 969, 973 (11th Cir. 2017) (citing *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989)). If "reasonable grounds do exist" for the administrator's decision, the Court must "then determine if he operated under a conflict of interest." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011). "If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Id.* (citing *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010)).[4]

---

[4] Plaintiff has not met his burden to demonstrate that Aetna's conflict of interest, created by its authority to approve and pay benefits, tainted its decision. *See Capone*, 592 F.3d at 1196 (citation omitted). Specifically, Plaintiff has cited no evidence that the

Upon review, it appears that Plaintiff raises only one other argument in support of his Motion for Summary Judgment.[5]  Plaintiff argues that Aetna did not have the "authority to request tax returns related to Pankey's passive real estate investment with Brown Little Development" under the terms of the Plan's "Test of Disability."  (Doc. 22 at 19).  The Plan provides that a benefits recipient meets the Test of Disability "any day [the recipient is] unable to *work* at any reasonable occupation solely because of an illness, injury or disabling pregnancy-related condition."  (Doc. 21-2 at 1422 (emphasis added)).  Though Plaintiff admits the Plan does not define the term "work," Plaintiff nonetheless argues that the use of the term "work" excludes his "ability to earn money from investments," which he describes as "passive" in nature.  (Doc. 22 at 20–22).  Even if the Court were to agree with Plaintiff's interpretation, that is not a basis for the Court to hold that his interpretation is controlling, as Defendant has the "right to adopt reasonable policies, procedures, rules, and interpretations of this Policy to promote orderly and efficient administration."  (Doc. 21-2 at 1409).  It provides no such right to Plaintiff.  "[T]he arbitrary and capricious standard of review would have little meaning if ambiguous language in an ERISA plan

---

conflict of interest tainted Aetna's decision, other than the conflict itself.  *See Nunnelly v. Life Ins. Co. of N. Am.*, No. 4:19-cv-0138, 2021 WL 2826430, at *20 (N.D. Ala. July 7, 2021) ("[Plaintiff] does not elaborate how [the administrator's] conflict of interest tainted its eligibility decision, and thus he fails to establish the conflict rendered [the administrator's] decision arbitrary and capricious."), *aff'd*, No. 21-12537, 2022 WL 1640790 (11th Cir. May 24, 2022).

[5] Plaintiff also argues that the Plan does not support the termination of his benefits if the financial information requested by Aetna was sought to determine benefit offsets.  (*See* Doc. 22 at 23–25).  However, "[t]he parties agree that Defendant terminated" Plaintiff's benefits pursuant to the policy requiring Plaintiff to submit proof he meets the "LTD test of disability."  (Doc. 29 at 11).  Thus, this argument will not be considered.

were construed against the [plan administrator]." *White v. Coca-Cola Co.*, 542 F.3d 848, 857 (11th Cir. 2008) (quoting *Cagle*, 112 F.3d at 1519).

Furthermore, the two cases Plaintiff cites in support of his interpretation are not persuasive. *See Zanny v. Kellogg Co.*, No. 4:05-cv-74, 2006 WL 1851236, at *1 (W.D. Mich. June 30, 2006) (noting how "the controlling plan language did not assign discretionary authority" to the plan administrator and that the "plan review is to be conducted *de novo* based upon the administrative record"); *Cates v. Reliance Stand. Ins. Co.*, No. 1:18-cv-543, 2019 WL 4751860, at *7 (N.D. Ga. July 2, 2019) (holding that "no reasonable grounds existed for [the plan administrator's] decision to demand copies of [Plaintiff's] tax returns and then reduce his benefits for failing to comply with that demand" because the only policy provision "potentially relevant" to his income did not apply). In this case, Plaintiff does not dispute that he had a continuing obligation to meet Aetna's Test of Disability under the terms of his Plan. (*See* Doc. 22 at 11). Plaintiff also does not dispute that he refused to provide any of the documents specifically requested by Defendant in order to make this determination. (*See id.* at 10). He simply requests that the Court defer to his judgment and interpretations of the Plan over Aetna.

Where, as here, a plan requires a benefits recipient to demonstrate financial proof of disability, and the recipient fails to provide the proof requested, courts have granted summary judgement in favor of a plan administrator. *See Coates v. Guardian Life Ins. Co. of Am.*, No. 8:07-cv-291-T, 2009 WL 1043981, at *4 (M.D. Fla. Apr. 16, 2009). Plaintiff fails to explain how this case is any different in light of Defendant's reasonable interpretation of the Plan, and thus fails to carry his burden of showing that Defendant's decision to terminate his LTD benefits was otherwise arbitrary.

12

## IV.  CONCLUSION

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Objection (Doc. 31) is **SUSTAINED**.

2. The Report and Recommendation (Doc. 29) is **ADOPTED** to the extent consistent with this Order and **REJECTED** in all other respects.

3. Plaintiff's Motion for Summary Judgment (Doc. 22) is **DENIED**.

4. Defendant's Motion for Summary Judgment (Doc. 24) is **GRANTED**.

5. The Clerk is directed to enter judgment, in favor of Defendant and against Plaintiff, providing that Plaintiff shall take nothing on his claims.  Thereafter, the Clerk is directed to terminate any pending motions and close this case.

**DONE AND ORDERED** in Orlando, Florida on March 28, 2025.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

13